IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

YOLANDA RAYMOND, )
)
      **Plaintiff,** )
)
vs. ) Case No. 16-CV-666-TCK-JFJ
)
(1) SELECT SPECIALTY HOSPITAL – )
TULSA/MIDTOWN, LLC, and )
(2) SELECT SPECIALTY HOSPITAL – )
TULSA, INC., )
)
      **Defendants.** )

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment (Doc. 22) of Defendants Select Specialty Hospital—Tulsa/Midtown, LLC and Select Specialty Hospital—Tulsa, Inc. ("Defendants"). For reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**I.  Statement of Undisputed Material Facts**

    **A.  Plaintiff's Employment with Defendant and Sleeping on Duty**

Plaintiff Yolanda Raymond ("Plaintiff") is an African-American woman who was employed by Defendants as a Certified Nursing Assistant ("CNA") from approximately May 20, 2013 to July 22, 2015. (Doc. 22, ¶ 1; Doc. 28-11, pg. 1.) Plaintiff reported to Chief Nursing Officer Dawn Goetz ("Goetz"). (Doc. 33-2, pg. 2-3.) Plaintiff was employed by Defendants as a "bedside sitter" and assigned to monitor patients who have a high risk of falling or pulling out medical devices. (Doc. 22, ¶ 11, 16.) Defendants' written bedside sitter policy lists responsibilities including "constant surveillance of patient" and "assist[ing] patient with basic hygiene, oral intake, and activity under the direction and supervision of the assigned nurse." (Doc. 28-7.) A bedside sitter was also required to check for wet pads beneath a patient every one to two hours. (Doc. 22, ¶ 18.)

1

On the night of June 20, 2015, Plaintiff was working a 12-hour shift as a bedside sitter, from 7:00 p.m. to 7:00 a.m. the next morning (Doc. 22, ¶ 20.) Plaintiff had worked nearly 100 hours in that pay period including the last six days straight. (Doc. 28-4, pg. 1; Doc. 28-1, pg. 8.) During her shift on the night of June 20, 2015, she received a bathroom break around midnight, but no other breaks during her shift, despite requesting them. (Doc. 28-1, pg. 11-16.) On the morning of June 21, 2015, Plaintiff claims to have given her patient a bath somewhere between 4:30 a.m. and 5:00 a.m. (Doc. 28-1, pg. 34.) Between approximately 6:25 a.m. and 6:40 a.m., Charge Nurse Linda Johnson ("Johnson") discovered Plaintiff sleeping on duty. (Doc. 22, ¶ 19.) Plaintiff woke up when Johnson entered the patient's room and said "good morning." (Doc. 22, ¶ 24.) Immediately after Plaintiff awakened, Johnson told her that she needed to gather her things and meet Johnson in the Charge Nurse's office. (Doc. 22, ¶ 26; Doc. 28-1, pg. 23.)

In the Charge Nurse's office, Plaintiff was told by Johnson that it was not acceptable for her to be asleep while bedside sitting with a patient, as the patient could injure herself. (Doc. 22, ¶ 27.) Plaintiff apologized and explained that she had been tired, but it wouldn't happen again. (Doc. 22, ¶ 28.) Johnson sent Plaintiff home and told her that the incident would be reported to Goetz. At 8:03 a.m., Johnson emailed Goetz reporting finding Plaintiff asleep. (Doc. 22, ¶ 32; Doc. 28-8.) In the email Johnson noted that after she sent Plaintiff home she had returned to the patient's room to relieve the staff member she had assigned there, and found the patient had four wet blue pads and a wet sheet under her. (Doc. 28-8.)

After being sent home, Plaintiff called Goetz from the parking garage and told Goetz that Johnson had found her sleeping, and had sent her home. She apologized and said that it wouldn't happen again. (Doc. 22, ¶ 33; Doc. 28-1, pg. 29.) The following day, Plaintiff called Goetz again, and was told that Defendants were investigating. (Doc. 28-1, pg. 29.) Aside from the email that Johnson sent Goetz, however, there does not appear to be any further documentation of an

investigation. (Doc. 22-6.) Goetz has stated that she did not interview the Charge Nurse who was on duty the night in question. (Doc. 28-3, pg. 21.)

### B. Defendants' Policies and Disciplinary Procedures

All employees of Defendants are subject to the Select Medical Human Resources Employee Handbook ("employee handbook"). (Doc. 28-5, pg. 2.) While the employee handbook describes a system of progressive discipline, it also notes that "some unacceptable behaviors are so serious that they may justify immediate termination." "Sleeping while on duty," is listed among these. (Doc. 28-5, pg. 7.) Goetz testified that sleeping while on duty will always result in immediate termination. (Doc. 33-2, pg. 4.)

Goetz also testified that when administering discipline, she submitted a request for disciplinary action to Human Resources Coordinator Angelique Hampton ("Hampton"). (Doc. 28-3, pg. 3.) It was her understanding that Hampton would review the request with her regional director and once Hampton and her regional director made a decision, Goetz was told whether to move forward. (Doc. 28-3, pg. 3.)

### C. Plaintiff's Termination

On June 24, 2015, Goetz called Plaintiff and asked her to come in to speak with her. Goetz and Hampton met with Plaintiff in Goetz's office. (Doc. 22, ¶ 35.) At this meeting, Goetz and Hampton discussed the policy that bedside sitters must not sleep while sitting with patients. They also presented Plaintiff with a Disciplinary Action Form ("DAF"), which stated that Johnson found Plaintiff sleeping on duty at approximately 6:40 a.m. on June 21, 2015. (Doc. 28-1, pg. 33.) The form also noted that Plaintiff had told Goetz that she had "just dozed off." The form additionally stated that "[t]he patient was found to have 4 blue pads underneath her, saturated with urine—her linen sheet was also saturated with urine and the bed had a visual moisture ring noted." (Doc. 22-9.) Plaintiff contends that she must not have read the form at the time she signed it, as she had

3

given the patient a bath around 4:30 a.m. or 5:00 a.m., and not enough time had elapsed between the bath and when she was found sleeping for the patient to soak through four blue pads and the linen sheet. (Doc. 28-1, pg. 34.) When Plaintiff signed the form, she did not contest its contents, nor did she offer any statement except an apology. (Doc. 22-9; Doc. 28-1, pg. 33-34.) Goetz and Hampton terminated Plaintiff's employment with Defendants at this meeting. (Doc. 28-1, pg. 32; Doc. 22-9.)

### D. Potential Comparator was not terminated

Dorothy Sutherland ("Sutherland"), a Caucasian woman, worked for Defendants as a "monitor tech." (Doc. 22, ¶ 46-47.) Sutherland also reported to Goetz. (Doc. 33-2, pg. 3.) As a monitor tech, Sutherland was required to watch the monitor screens that continuously report patients' vital signs for potentially lethal rhythms. (Doc. 22, ¶ 47.) Accordingly, a monitor tech's eyes should be 100% focused on those screens. (Doc. 28-3, pg. 10.)

Sutherland was accused of sleeping while on duty by CEO Linda Tiemens ("Tiemens"). (Doc. 22, ¶ 51-52; Doc. 28-3, pg. 4-5.) Goetz was out of the building at the time but on the following workday, Tiemens approached her and told her she thought Sutherland was sleeping on the job. (Doc. 28-3, pg. 4.) Goetz testified that if Sutherland was truly sleeping, Tiemens should have suspended her pending an investigation. She also indicated the investigation should have begun immediately, while memories were still fresh. (Doc. 28-3, pg. 5-6.) However, Tiemens did not suspend Sutherland and did not begin an immediate investigation. (Doc. 28-3, pg. 5-7.) Goetz testified this was a pattern of behavior with Tiemens—that she would bring Goetz things after the fact and then ask Goetz to rectify them. (Doc. 28-3, pg. 6-7.)

Upon her return to work, Goetz did, in fact, investigate. However, since Sutherland was not scheduled to work at this time, Goetz did not suspend her. (Doc. 28-3, pg. 14.) During the investigation, Goetz spoke to Sutherland, who clearly denied sleeping. (Doc. 28-3, pg. 7.) Goetz

4

also reinterviewed Tiemens, who then said she was not 100% sure that Sutherland was sleeping. (Doc. 28-3, pg. 8.) Tiemens and Goetz even playacted the scene and determined that Tiemens would have only been able to see the side of Sutherland's face. (Doc. 28-3, pg. 9.) Johnson was asked by Goetz if she had ever had any issues with Sutherland sleeping while on duty, and Johnson reported she had not. (Doc. 28-3, pg. 12.)

Goetz gave the results of her investigation to Hampton. Hampton also spoke with the Chief Nurse and several other nurses who were on the floor the day Sutherland was accused of sleeping, but no one had witnessed her sleeping. (Doc. 28-4, pg. 1.) However, there is no documentation of Defendants' investigation with regard to Sutherland. (Doc. 28-6, pg. 1-2.) Defendants' internal documents state that they decided "not to proceed with disciplinary action, because we had a "he said/she said." (Doc. 28-4, pg. 1.)

## II.   Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). In its summary judgment analysis, the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A movant that "will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted). If the movant makes this prima

5

facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing FED. R. CIV. P. 56(e)). To meet this burden, the nonmovant must set forth facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

### III. *McDonnell Douglas* burden-shifting framework

Plaintiff brings claims of discrimination and wrongful termination[1] under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Oklahoma Anti-Discrimination Act ("OADA") and 42 U.S.C. § 1981 ("§ 1981"). The parties agree that, absent direct evidence of discrimination, claims under all three laws are subject to the *McDonnell Douglas* burden-shifting framework. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (Title VII and § 1981); *Barzellone v. City of Tulsa*, No. 99-5088, 2000 U.S. App. LEXIS 5987, *15-16 (10th Cir. 2000) (unpublished) (OADA); *Lacount v. S. Lewis Sh. Opco., LLC*, No. 16-cv-0545-CVE-TLW, 2017 WL 319217, at *3 (N.D. Okla. Jan. 20, 2017) (OADA).

---

[1] Plaintiff's First Claim for Relief is styled as "Discrimination, Retaliation and Wrongful Termination Based on Race." However, in Plaintiff's Petition, she alleges no facts to support a claim of retaliation (Doc. 4-1), and in her Response in opposition to Defendants' Motion for Summary Judgment, she argues only that she experienced "discrimination, disparate treatment, and wrongful termination." (Doc. 28, pg. 6.) Accordingly, the Court construes Plaintiff's Petition to not include a claim of retaliation.

6

Under the *McDonnell Douglas* burden-shifting framework, Plaintiff must first establish a prima facie case of discrimination. *See Herrera v. United Airlines, Inc.*, No. 17-1453, 2018 U.S. App. LEXIS 29633, *7-8, ___ F. App'x ___ (10th Cir. 2018) (unpublished) (internal citations omitted). To establish a prima facie case of discrimination generally, Plaintiff must "show, by a preponderance of the evidence, that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015).[2] The burden of establishing a prima facie case is "not onerous." *See Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (10th Cir. 1981).

If Plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to rebut the presumption of discrimination by producing some evidence that it had legitimate, nondiscriminatory reasons for the decision. *Herrera*, 2018 U.S. App. LEXIS 29633, *7-*8; *Bennett*, 792 F.3d at 1266. Defendant's burden at this stage is "'exceedingly light,' as its stated reasons need only be legitimate and non-discriminatory on their face." *Lucas v. Office of the Colo. State Pub. Def.*, 705 F. App'x 700, 704 (10th Cir. 2017) (unpublished), quoting *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).

The burden then shifts back to Plaintiff to show by a preponderance of the evidence that Defendants' explanation was merely pretextual. Plaintiff may establish pretext by showing "such

---

[2] While this test has taken many different formulations, all include Plaintiff alleging her membership in a protected class, adverse action, and a nexus between the two. *See, e.g.*, *Dyer v. Lane*, 564 F. App'x 391, 394 (10th Cir. 2014) ("(1) [she] was a member of a protected class; (2) [she] was qualified and satisfactorily performing [her] job; and (3) she was terminated under circumstances giving rise to an inference of discrimination."); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class."); *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005) ("(1) he belongs to a protected class; (2) he was qualified for the job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.").

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bennett*, 792 F.3d at 1267, quoting *Jones v. Okla. City. Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010).

### A. Prima Facie Case

Plaintiff has met her burden of establishing a prima facie case. Plaintiff is an African-American woman who suffered the adverse employment actions of being suspended pending an investigation of her sleeping on the job and eventually being terminated. However, Dorothy Sutherland, a Caucasian woman who was accused of sleeping on the job, was not suspended pending an investigation and was not terminated from her employment. These circumstances give rise to an inference of discrimination. Accordingly, Plaintiff has met the "not onerous" burden of establishing a prima facie case.

### B. Legitimate, Nondiscriminatory Reasons

Similarly, Defendants have met their "exceedingly light" burden to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Defendants contend that Plaintiff was suspended, and eventually terminated, in accordance with the employee handbook, which lists "[s]leeping while on duty" as an "unacceptable behavior [] so serious that [it] may justify immediate termination." (Doc. 22, pg. 14; Doc. 28-5, pg.7.)

### C. Pretext

Though Plaintiff is not required to use any particular means to show that Defendants' reasons are pretextual, a plaintiff typically shows pretext in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false;

> (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or
> (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff. A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

*Kendrick*, 220 F.3d at 1230 (internal citations omitted).

### 1. Stated Reason was False

The Court assumes, *arguendo*, that Plaintiff's contention that not enough time had elapsed since she had given her patient a bath for that patient to soak through four blue pads and a linen sheet would create a genuine dispute of material fact as to whether Defendants' reasons for termination were false. However, when evaluating pretext, the Court must look to the facts as they appeared to the person making the decision to terminate Plaintiff. *See Kendrick*, 220 F.3d 1220, 1231. In this case, the DAF's narrative follows closely the email that Johnson sent Goetz describing finding Plaintiff asleep, as well as Plaintiff's own statements, indicating that she was sleeping, to both Johnson and Goetz. (Doc. 22, ¶ 32, 33; Doc. 28-8.) The facts in Johnson's email, as well as Plaintiff's own admissions that she was sleeping, were known to Defendants at the time of Plaintiff's termination and could form a legitimate reason for an employment decision.

At the time Plaintiff was terminated Defendants had nothing to counter the evidence that the patient had four blue pads underneath her, saturated with urine. Plaintiff did not record the time she gave her patient a bath, because she was not able to record it until after her shift, and she was suspended before the end of her shift. (Doc. 28-1, pg. 19, 28.) Moreover, when Plaintiff had the opportunity to present Defendants with these facts, she chose not to. Plaintiff's own testimony indicates that, aside from apologizing, she did not say anything at all in her meeting with Goetz

9

and Hampton other than apologizing. (Doc. 28-1, pg. 32.) Plaintiff's testimony also indicates that she did not object to the DAF's narrative at the time she signed it. (Doc. 28-1, pg. 33.) Accordingly, Plaintiff cannot create a genuine issue of material fact as to whether Defendants' stated reason for her termination was false, as none of the facts potentially supporting this contention were available to Defendants at the time Plaintiff was terminated.

### 2. Treated Differently From Other Similarly-Situated Employees

Plaintiff has failed to establish a genuine dispute of material fact as to whether Defendants stated legitimate, nondiscriminatory reasons were pretextual, as Plaintiff has not shown that she was treated differently from other similarly-situated employees. Though a plaintiff may establish pretext by showing disparate treatment, not all unexplained differences in treatment, or inconsistent or irrational employment practices are illegal. Rather, the law prohibits intentional discrimination *based upon* an employee's protected class characteristics. *See EEOC v. Flasher Co.*, 986 F.2d 1312, 1319-21 (10th Cir. 1992) (emphasis in the original). When a Court is evaluating pretext, the Plaintiff must prove that the disadvantageous treatment was based upon the Plaintiff's membership in a protected class rather than upon either a valid, nondiscriminatory reason, or upon no particular reason at all. *Id.*

For an individual to be "similarly situated to Plaintiff, she must have (1) dealt with the same supervisor and (2) been subject to the same standards governing performance evaluation and discipline. *Herrera v. United Airlines, Inc.*, 2018 U.S. App. LEXIS 29633, *13 (internal citations omitted), quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). In order to establish pretext by showing differential treatment, Plaintiff must show that (1) her similarly-situated colleagues who did not belong to a protected class violated "rules of comparable seriousness," (2) Defendant treated the two colleagues differently (for example, by not suspending or terminating the nonprotected colleague's employment, as they did with Plaintiff), and (3) this

differential treatment is not trivial, accidental, or explained by nondiscriminatory motives. *Herrera*, 2018 U.S. App. LEXIS 29633, *13-*14, quoting *Kendrick*, 220 F.3d at 1230.

### a. Plaintiff was suspended pending an investigation, though Sutherland was not

For the purposes of determining whether Plaintiff was treated differently from other similarly-situated employees, as to her suspension, Plaintiff and Sutherland are not similarly-situated employees, as they did not "deal with the same supervisor." *Aramburu*, 112 F.3d at 1404. In *Kendrick*, for example, the Court did not find disparate treatment where two employees physically threatened different intermediate-level supervisors, because "different supervisors will inevitably react differently to employee insubordination." 220 F.3d at 1233. Like in *Kendrick*, in this case, while both Plaintiff and Sutherland reported to Goetz, they were initially accused of sleeping while on duty by different supervisors. It was these supervisors—Johnson for Plaintiff and Tiemens for Sutherland—who made the initial decision as to their discipline, not Goetz. Accordingly, Plaintiff and Sutherland did not deal with the same supervisor as to their initial suspension, and were not similarly situated.

Plaintiff is correct that Defendants may have deviated from best practices when they failed to suspend Sutherland pending an investigation into whether she was sleeping and failed to start an investigation immediately (Doc. 28-3, pg. 5-6). Additionally, Plaintiff is correct that she was treated differently than Sutherland in this regard, as she was suspended pending an investigation, consistent with best practices. (Doc. 22, ¶ 30.) However, Plaintiff has not shown that this deviation was mere pretext for discriminatory motive. Rather, like in *Kendrick*, it appears that the difference in initial discipline was based on the different reactions of different supervisors. Indeed, Goetz testified that Tiemens's reaction to believing she had witnessed Sutherland sleeping on duty was

a common one for her. (Doc. 28-3, pg. 6.) Accordingly, Plaintiff has not demonstrated that the two employees were similarly situated, and therefore, has not established pretext.

### b. The Claims Against Plaintiff Were Investigated Differently than Those Against Sutherland

For the purposes of determining whether Plaintiff was treated differently from other similarly-situated employees as to Defendants' investigation into whether she was sleeping while on duty, Plaintiff and Sutherland are similarly situated. It appears that Goetz supervised Plaintiff and Sutherland, and investigated the claims against both employees. (Doc. 28-8; Doc. 28-3, pg. 7; Doc. 33-2, pg. 2-3.) Further, both employees faced potential discipline for violating the employee handbook's prohibition on sleeping while on duty. Additionally, because both employees faced potential discipline for violating the same prohibition, Plaintiff has established that, with regard to the investigation into these accusations, she and Sutherland were accused of violating rules of comparable seriousness.

However, Plaintiff has not shown a genuine dispute of material fact that she and Sutherland experienced different treatment. Plaintiff appears to argue that she experienced different treatment than Sutherland both because Goetz engaged in a more detailed investigation into the accusations against Sutherland and because there was no documentation of this investigation. Contrary to these arguments, however, the facts of each investigation demonstrate that both employees received complete investigations into the allegations against them. Though Plaintiff's investigation appears shorter than that for Sutherland—it included only an email from Johnson to Goetz and Plaintiff's own admissions to Johnson and Goetz—further investigation was not necessary, as Plaintiff admitted that she had been sleeping to both Johnson and Goetz.[3] By

---

[3] Defendant argues that Plaintiff was also witnessed sleeping by two employees, as opposed to one witness of Sutherland. (Doc. 22, pg. 3, 17; Doc. 28-3, pg. 4.) While Johnson's email to

contrast, Sutherland denied that she had been sleeping, and Tiemens, who accused her, later said that she was not 100% sure that Sutherland was sleeping. Accordingly, it was necessary for Defendants to expand their investigation into other sources, such as other employees who may have witnessed Sutherland sleeping. Because both Plaintiff and Sutherland received appropriate, complete investigations into the allegations against them, these allegations cannot show disparate treatment, and therefore cannot show pretext.

Plaintiff cannot show disparate treatment simply due to the differences in documentation in the two investigations, as this difference is not based on the thoroughness of the investigation, but, as with the decision of whether or not to suspend either Plaintiff or Sutherland, based on the different reactions of different supervisors. *See* supra III.C.2.a. In the case of Sutherland, there was no documentation, as the investigation took place in the form of oral discussions. (Doc. 28-6, pg. 1.) By contrast, in the case of Plaintiff, Johnson emailed Goetz that she found Plaintiff sleeping, rather than reporting her findings orally. (Doc. 28-8.) This difference alone, without any further evidence of a difference in investigation, cannot create a genuine difference of material fact as to whether Plaintiff experienced different treatment than Sutherland.

### c. **Plaintiff was terminated, though Sutherland was not**

Plaintiff and Sutherland are considered similarly-situated employees with regard to Defendants decision to terminate Plaintiff but not Sutherland. The decision to terminate an employee rests with Human Resources, and the two employees dealt with the same supervisor. Because both employees were accused of violating the employee handbook by sleeping while on

---

Goetz does indicate that both she and Charge Nurse-In-Training Angela Sexton discovered Plaintiff sleeping on duty (Doc. 28-8), only Johnson is mentioned in the DAF. (Doc. 22-9.) Additionally, Plaintiff does not recall seeing Ms. Sexton either in the patient's room or on her way out of the patient's room. (Doc. 28-1, pg. 24.) Accordingly, Plaintiff has shown a genuine dispute of material fact as to whether Ms. Sexton witnessed her sleeping and this fact may not form the basis for summary judgment.

duty, they were also subject to the same standards governing performance evaluation and discipline. *Aramburu*, 112 F.3d at 1404.

However, Plaintiff has not shown a genuine dispute of material fact that she and Sutherland violated "rules of comparable seriousness." *Kendrick*, 220 F.3d at 1230. While both Plaintiff and Sutherland were accused of violating the employee handbook's prohibition of sleeping while on duty, Plaintiff must show more than the same accusation—she must show that Sutherland actually violated a rule of comparable seriousness. In this case, the undisputed facts cannot show this, as they reveal that Johnson was certain that she had witnessed Plaintiff sleeping,[4] and Plaintiff twice admitted to being asleep. Sutherland, on the other hand, denied sleeping, and Tiemens, who accused her of sleeping, later stated that she was not 100% sure that Sutherland was sleeping. Further, no one else had witnessed Sutherland sleeping. Construed most favorably to Plaintiff, these facts demonstrate that she was definitely sleeping, and Sutherland although accused of sleeping, denied same and an investigation revealed no further evidence of her sleeping.

Even if the Court assumes that there is a genuine dispute over whether Sutherland was in fact sleeping while on duty, this dispute will not be material. When evaluating pretext, a Court must look to the facts as they appeared to Human Resources when they made the decision whether or not to terminate either Plaintiff or Sutherland. *See Kendrick*, 220 F.3d at 1231. The Court's inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. *See Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004). In this case, though Plaintiff and Sutherland were accused of violating the same policy, the undisputed facts show material

---

[4] Defendants contend that Plaintiff was witnessed sleeping by both Johnson and Charge Nurse-in-Training Angela Sexton, but there is a genuine dispute as to this material fact. *See supra*, n.4.

14

differences between the two situations. The facts as known to Human Resources, in light of their investigations, do not present any reason to suggest that they believed, or should have believed, that Plaintiff and Sutherland violated "rules of comparable seriousness."

Plaintiff appears to argue that it is unfair for Defendants' determination of whether either Plaintiff or Sutherland were sleeping on duty to be based on their own accounts of whether they had been sleeping, because it penalizes Plaintiff for her honesty. She appears to argue that it is unfair for Defendants to terminate Plaintiff for sleeping while on duty when so many of the factors contributing to her falling asleep—her working nearly 100 hours in the pay period, working for six straight days, and not receiving a requested break—were in Defendants' control. Plaintiff may be correct that her termination was unfair. However, a company must be allowed to exercise its judgment in determining whether, and how severely, it will discipline an employee, provided it does not make those decisions based on an employee's membership in a protected class. *See Kendrick*, 220 F.3d at 1233; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1319-21 (10th Cir. 1992). In this case, it appears that Defendants decision to terminate Plaintiff but not Sutherland was based on their belief that Plaintiff was definitely sleeping while on duty, while it was uncertain whether Sutherland was. Regardless of how ill-considered or unfair Defendants' decision might have been, Plaintiff has not shown any dispute of material fact as to whether Defendants honestly believed those reasons. Accordingly, Defendants' articulated motivating reason cannot be converted into pretext because it appears ill-considered, unwise, or unfair.

## IV.      Conclusion

For the reasons set forth above, the Court finds that Plaintiff has failed to establish a genuine dispute of material fact as to her claims under Title VII, OADA, and § 1981.

Defendants' Motion for Summary Judgment (Doc. 22) is **GRANTED**.

Defendants' Motion in Limine (Doc. 31) is **DENIED AS MOOT**.

An order of judgment will be entered separately.

**SO ORDERED.**

**DATED THIS 20th day of March, 2019.**

*[signature: Terence C Kern]*

**TERENCE C. KERN**
**United States District Judge**